UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,
    *Plaintiff,*

v.

JESUS AGOSTO,
    *Defendant.*

No. 3:17cr98 (MPS)

**RULING ON MOTION FOR COMPASSIONATE RELEASE**

In February 2018, the defendant, Jesus Agosto, was sentenced to 121 months imprisonment. Mr. Agosto has filed a motion under 18 U.S.C. § 3582(c)(1)(A) for a reduction in his term of imprisonment to time served due to the dangers posed by the COVID-19 virus in combination with his underlying health conditions. (ECF No. 44.) In the alternative, he seeks a reduction of his sentence to a term short of time served because "the pandemic has made the sentence imposed more punitive than contemplated" at the time of sentencing. (ECF No. 44 at 1.) The Government filed a memorandum in opposition. (ECF No. 48.) For the reasons that follow, Mr. Agosto's motion is denied.

**I.**  **Background**

Between April 2013 and June 2013, investigators received information from four cooperating sources that a Hispanic male named "Gordo" (later identified as Mr. Agosto) was selling large quantities of heroin out of the Family Beltre Grocery store located at 955 Broad Street in Hartford, Connecticut, which was owned by Mr. Agosto's sister. *United States v. Agosto*, 3:13cr188, ECF No. 36, PSR ¶ 6. Investigators confirmed that Mr. Agosto was selling heroin out of the grocery store. PSR ¶ 7.

A Hartford Police Department confidential informant said that he had traveled with Mr. Agosto to New York where Mr. Agosto obtained 7 to 13 Glock .40 caliber pistols and approximately 15 kilograms of heroin and that Mr. Agosto transported the guns and heroin back to Hartford. PSR ¶ 6. In a search of Mr. Agosto's apartment conducted pursuant to a warrant, officers found a semi-automatic handgun and ammunition in the kitchen. PSR ¶ 11. A bag containing $23,000 was found in the bathroom ceiling. PSR ¶ 11.

In September 2013, Mr. Agosto was indicted on two counts of possession with intent to distribute and distribution of heroin, one count of conspiracy to distribute heroin, and one count of possession of a firearm in connection with a narcotics trafficking crime. *United States v. Agosto*, 3:13cr188 ECF No. 6. In July 2014, he pled guilty to Count Two of the indictment charging him with possession with Intent to Distribute and Distribution of Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). He also waived indictment and pled guilty to count one of an information charging him with possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1] ECF No. 31. On January 8, 2015, U.S. District Judge Stefan R. Underhill sentenced Mr. Agosto to 41 months on both counts to be served concurrently. ECF No. 51. The Court also imposed a three term of supervised release.

In September 2016, Mr. Agosto's term of supervised release began. *United States v. Agosto*, 3:17cr98, ECF No. 32, PSR at 12.

In the spring of 2017, a confidential source provided information to law enforcement officers from the Drug Enforcement Administration that Mr. Agosto was selling heroin from the

---

[1] Mr. Agosto was prohibited from possessing a firearm as a result of a December 2007 conviction of Robbery in the First Degree for which he was sentenced to 12 years imprisonment, 33 months to serve and 3 years probation. Mr. Agosto was on state probation from March 2010 to March 2013. *United States v. Agosto*, 3:13cr188, ECF No. 36, PSR ¶ 33.

2

Family Beltre Grocery store. *United States v. Agosto*, 3:17cr98, ECF No. 32, PSR ¶ 6. In April and May 2017, investigators witnessed CS-1 make controlled purchases of 5 grams of heroin from Mr. Agosto. PSR ¶¶ 7, 8, 10. During the transactions, Mr. Agosto was seen to exit the store and walk to the trunk of a tan Nissan Maxima that was parked outside and then return to the store. PSR ¶¶ 7, 8, 9, 10.

When he was arrested at the Family Beltre Grocery store on May 3, 2017, investigators seized $1,330 from his person. PSR ¶ 11. During a search of the store, investigators seized evidence of Mr. Agosto's heroin trafficking activities, including heroin packaging materials, a small amount of heroin, bundles of cash (totaling $13,870) and five cell phones. PSR ¶ 11. A search of the trunk of the Nissan Maxima revealed a bag containing 440.5 grams of fentanyl and heroin; a bag containing 41.85 grams of heroin; a bag containing 0.4 grams of fentanyl and heroin; three bags containing a total of approximately 618 grams of marijuana; a loaded RG .38 Special snub-nose revolver, revolver; seven unfired .38 caliber rounds of ammunition (including six .38 caliber rounds that were loaded in the .38 Special revolver); a black semi-automatic Colt 1911 Government model handgun with a metal magazine containing five unfired rounds of ammunition; a large amount of glassine baggies; a black digital scale with white powder on it; and three unfired .38 caliber rounds of ammunition. The ammunition within the .38 Special revolver had hollow points. From the interior of the Nissan Maxima, investigators seized one unfired .38 caliber round of ammunition, Ziploc bags with an apple design, and a piece of paper addressed to Jesus Agosto. PSR ¶ 12; ECF No. 28, Stipulation of Offense Conduct.

In June 2017, Mr. Agosto was indicted on charges of possession with intent to distribute and distribution of fentanyl; possession with Intent to Distribute and Distribution of Heroin; Possession with Intent to Distribute Heroin, and Possession of a Firearm in Furtherance of a Drug

Trafficking Crime. *United States v. Agosto*, 3:17cr98, ECF No. 10. In November 2017, Mr. Agosto pled guilty to count four of the indictment charging him with possession with intent to distribute 100 grams or more of a mixture and substance containing heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(i). ECF Nos. 27, 28. As set forth in the plea agreement, Mr. Agosto fell within criminal history category IV with a total offense level of 29 and faced a guideline range of 121 - 151 months. PSR ¶ 88.

On February 20, 2018, I sentenced Mr. Agosto to 121 months imprisonment and 4 years supervised release. ECF No. 42. The Judgment states that

> The sentence reflects the need to protect the public and deter the defendant, as well as the need to promote respect for the law, in light of the defendant's commission of virtually the same federal offense as the one for which he was already on supervised release. The Guidelines sentence also reflects the need to reflect the seriousness of the offense, which contributed to the perpetuation of a public health crisis in Connecticut.

In addition, I sentenced Mr. Agosto to a concurrent sentence of 15 months for violating the conditions of his supervised release in his other case, 313cr188. ECF No 65.

Mr. Agosto's projected date of release is December 2, 2025.[2] ECF No. 44-1 at 2.

## II.   Statutory Framework

Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is

---

[2] Federal Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc (last visited January 8, 2021).

4

consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Under this section, as modified by the First Step Act of 2018, Pub. L. No.115-391, 132 Stat. 5239, I am free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." *United States v. Brooker*, No. 19-3218-CR, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). As a result, because Mr. Agosto – and not the Bureau of Prisons ("BOP") – brings the instant motion, I am not bound by the Sentencing Commission's outdated policy statement applicable to Section 3582(c)(1)(A), *see* U.S.S.G. § 1B1.13, which the Second Circuit recognized as applying only to motions for sentence reduction brought by the BOP. *Brooker*, 2020 WL 5739712, at *1, 6 ("hold[ing] that Application Note 1(D) does not apply to compassionate release motions brought directly to the court by a defendant under the First Step Act . . ."; rather, this Guideline "only [applies] to those motions that the BOP has made" under this Act). However, "[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason." *Brooker*, 2020 WL 5739712, at *8 (citing 28 U.S.C. § 994(t)) (emphasis in original).

Therefore, I may reduce Mr. Agosto's term of imprisonment, after considering the Section 3553(a) factors, if (1) he has fully exhausted his administrative remedies or 30 days have passed from receipt of his request by the Warden, and (2) I find that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

Mr. Agosto has submitted evidence that he made a compassionate release request to the Warden, see ECF No. 44-1 at 1, and the Government does not dispute that Mr. Agosto has satisfied the exhaustion requirement. As to the merits of Mr. Agosto's motion, I find that, when all of the

5

circumstances including the Section 3553(a) factors are considered, he has not shown that a reduction of his term of imprisonment is warranted.

Mr. Agosto, who is 30 years old,[3] argues that his health conditions of type 1 diabetes mellitus and obesity place him at a greater risk for serious illness or death should he contract COVID-19.

According to the CDC, "[a]dults of any age with certain underlying medical conditions are at increased risk for severe illness from the virus that causes COVID-19."[4]  These conditions include "obesity, defined as a body mass index (BMI) between 30 kg/m2 and < 40 kg/m2 or severe obesity (BMI of 40 kg/m2 or above)."[5]  Mr. Agosto suffers from this condition. PSR ¶ 59; ECF No. 45-1. As of January 2018, Mr. Agosto weighed 240 pounds which at 5'6" yields a BMI of 38.7.[6] PSR ¶ 57.

In addition to obesity, Mr. Agosto has type 1 diabetes. PSR ¶ 59. As to this condition, the CDC has stated that adults of any age with type 1 diabetes[7] "might be at an increased risk for

---

[3] According to the Centers for Disease Control and Prevention ("CDC"), "the risk for severe illness from COVID-19 increases with age, with older adults at highest risk" with the "greatest risk for severe illness from COVID-19" to be "among those aged 85 or older." Centers for Disease Control and Prevention, Older Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited January 8, 2021).

[4] Centers for Disease Control and Prevention, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 8, 2021).

[5] *Id*.

[6] Centers for Disease Control and Prevention, Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited January 8, 2021)

[7] Centers for Disease Control and Prevention, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 8, 2021). The CDC differentiates between type 1 and type 2 diabetes, explaining that "[h]aving type 2 diabetes increases your risk of severe illness from COVID-19. Based on what we know at this time, having type 1 or gestational diabetes might increase your risk of severe illness from COVID-19." *Id*.

severe illness from the virus that causes COVID-19."[8]

Although these medical issues place Mr. Agosto at an increased risk of severe illness from COVID-19 under the CDC guidelines,[9] they are insufficient to warrant a reduction in his term of imprisonment when the factors in 18 U.S.C. § 3553(a) are taken into account, as they must be.

As described above, Mr. Agosto has twice been convicted in federal court for virtually the same conduct. Both offenses involved heroin and fentanyl and both involved guns. He committed the instant conduct for which he is currently incarcerated (1) after serving more than a year and half in prison and (2) while on supervised release – underscoring that the sentence and the conditions of supervised release were not sufficient to deter him or protect the public from the very real danger that he poses. Mr. Agosto was selling significant amounts of fentanyl and heroin and in connection with his drug trafficking activities, possessed loaded firearms. His conduct contributed to the scourge of opioid addiction. The number of opioid-related overdose deaths in Connecticut has increased dramatically over the past years, from 357 deaths in 2012, to 1038 in 2017, 1200 in 2019.[10] ECF No 48 at 15. According to the CDC, the number of overdose deaths has accelerated during the pandemic.[11] Connecticut was recently projected to have 1362 overdose deaths in 2020. ECF No. 48 at 15. With 58 months still remaining on his sentence and in view of

---

[8] Mr. Agosto also has sickle cell trait and cites to certain literature expressing concern about its possible impact on persons should they become infected with COVID-19. The CDC however has not identified this particular condition as one that increases, or might increase, the risk of severe illness from COVD-19. Even if sickle cell trait does increase the risk of severe illness from COVID-19, I would still deny Mr. Agosto's motion for the reasons herein.

[9] The CDC guidelines state that, with respect to people with multiple underlying conditions: "The more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." Centers for Disease Control and Prevention, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[10] https://www.nbcconnecticut.com/news/local/overdose-deaths-on-the-rise-but-recovery-help-is-available/2343732

[11] https://www.cdc.gov/media/releases/2020/p1218-overdose-deaths-covid-19.html

Mr. Agosto's criminal conduct – committed after having served a term of incarceration for essentially the same conduct and while on supervised release – reducing his sentence to time served would fail to reflect the seriousness of his offense, promote respect for the law, or protect the public from the risk of further dangerous conduct by him.

Mr. Agosto requests in the alternative that his sentence be reduced to a term short of time served. In support, he points out that the conditions of his incarceration have been more harsh – with more confinement and isolation and less programming – as a result of the pandemic. I do not disagree with that assertion as far as it goes. But when that concern is weighed against the threat he poses to public safety by returning to his old ways - as he did the last time he was on federal supervised release - the scale tips decidedly against a reduction. To reduce Mr. Agosto's sentence, which was at the bottom of the sentencing guidelines range, would not be just punishment and would introduce unwarranted sentencing disparities. Reducing Mr. Agosto's sentence because he suffered somewhat harsher conditions than anticipated for what will likely be a year of his term is not consistent with the Court's obligation, under Section 3553(a), to protect the public and deter the defendant.

**However, because Mr. Agosto has demonstrated that he is at higher risk from COVID-19, I request, and urge, the Warden at Otisville FCI to prioritize him for receipt of a vaccine.**

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
        January 11, 2021